## ANDOVER v. MERRIMACK COUNTY.

In determining the settlement of a pauper, any settlement gained before January 1, 1796, is merely immaterial.

Taxes will be presumed to have been paid after twenty years.

If a person is under guardianship as a lunatic, and has the amount of property required for a settlement, but it is taxed to the guardian, and the taxes are paid by him, the ward will gain a settlement at the end of four years.

Andover *v.* Merrimack County.

A daughter is emancipated at the age of twenty-one years, though she remains a member of her father's family, unless she is disabled to take care of herself, and she does not take her father's after acquired settlement.

A person entitled to a distributive share of a deceased person's estate of sufficient amount, will gain a settlement thereby, though there has been no decree of distribution, the other requirements of the law being complied with.

A married woman, whose husband has no settlement of his own, will not take a settlement from her mother, acquired after her marriage.

Such a woman may acquire a settlement in her own right, by the possession of property, as if she were sole.

The right of a husband to reduce to his possession the choses in action of the wife, cannot be exercised by a guardian appointed over him as an insane person, but the property continues vested in the wife.

It is immaterial at what time the term of four years, required by law to gain a settlement by residence and possession of property, begins or ends.

THE town of Andover presented their petition to the county commissioners for the allowance of their claim for the support of Mary Heath, a pauper, and it was disallowed by them. The town then presented their petition to the Court of Common Pleas for its allowance. The town and the county commissioners agreed upon a statement of the facts, and the court disallowed the claim. The town filed its exceptions, and they were allowed.

The facts agreed were in substance as follows: Mary Heath was born in Salisbury, in 1803. In 1819 she was married to Ezekiel Heath, of Salisbury. Neither of them has any settlement in this State, unless from the following facts: He has been adjudged a county pauper by the Court of Common Pleas, and has for years been supported as such. Mary Heath is the illegitimate daughter of E. F. Searles, who was the legitimate daughter of J. Searles, and was born in said town, May 3, 1778. J. Searles had his settlement in Salisbury before January 1, 1796. He was taxed in 1796, and the following years to 1801, for real estate of the value of more than $400. In 1802 he

had become insane, and a guardian was appointed; and the same property was taxed to the guardian as such in 1802 and 1803. His daughter, E. F. Searles, lived with him, and in his family, until her majority, and after that time, with occasional interruptions, till the birth of her daughter, Mary Heath, in 1803.

E. F. Searles was supported by the town of Salisbury for many years, as a pauper, until, in 1837, by the death of her mother, she came into possession of some property. February 22, 1840, a guardian was appointed for her, on petition of the selectmen of Salisbury, as an insane person. In their petition they state her property to be in the hands of the town. The guardian returned an inventory of her estate in June, 1840, amounting to $1,462 in personal estate. She died, so that administration was granted on her estate in June, 1842, and the inventory of her estate, returned August, 1842, was $1,255 in personal estate. In March, 1844, the administrator's account was settled: "receipts $1,387, expenditures $106." A portion of this money was coming to Mary Heath, and in order that it might be saved from the improvidence of Heath and his wife, an application was made to the court of probate, and Ezekiel Heath was decreed an insane person, and R. Fellows appointed his guardian. No decree of distribution was ever made of E. F. Searles' estate; but, on the 27th of March, 1844, the administrator paid to the guardian between $300 and $400, and on the 13th of July, in that year, the balance of said Mary Heath's share of her mother's estate, amounting in all to about $600.

Of this sum there remained in the hands of the guardian, on the 14th of October, 1844, $362.40; and on the same day in 1845, $278,09; in 1846, $223,54; in 1847, $207,03; in 1848, $116,87. This money was never taxed, either in the hands of E. F. Searles, the administrator, or the guardian.

*Butterfield & Shirley*, for the petitioner.

---

Andover *v.* Merrimack County.

*Everett*, solicitor, for the county.

BELL, J. By the Revised Statutes, chap. 65, sec. 3, " no town shall be liable for the support of any person, unless he, or the person under whom he derives his settlement, shall have gained a settlement therein under some law passed since the 31st of December, A. D. 1795;" and by chap. 67, " when any poor person, for whose support no person or town in this State is chargeable, shall be relieved," the account " shall be paid out of the treasury of the county."

Under these statutes it becomes a question whether a person who had a settlement in a town by virtue of the laws in force before 1796, and who has continued to reside in the same town afterwards, can be deemed to have acquired a settlement in that town in any of the modes prescribed by the statute, while his original settlement remained. And we understand that, in determining the question of the liability of a town for the support of a pauper, it has always been deemed sufficient to show that such facts had occurred as were required to create the liability on the part of the town, at any time before the relief was furnished. It has never been deemed material whether or not a similar state of facts had existed at a previous time; so that, in effect, the pauper was regarded as continually gaining a settlement so long as the necessary conditions continued, or as soon as new facts occurred sufficient by law to render the town liable. We are, therefore, of opinion that it is immaterial whether a person had a settlement before 1796 or not. A person, already having a settlement in a town before that time, would gain a new settlement there as often as the state of facts occurred which would confer a settlement upon a person recently arrived. Any facts occurring before 1796 are to be regarded as entirely immaterial. *Gilford's Petition*, Belknap, December, 1849; *Barnstead* v. *Alton*, 32 N. H.

J. Searles, the grandfather of the pauper in this case, was taxed in Salisbury from 1796 to 1801, for real estate exceeding $150 in value, and after he became insane his guardian was taxed for him, in 1802 and 1803, for more than that amount of real estate. Nothing is said in the case of the payment of these taxes; but, as it was the duty of the officers of the town to collect them, we think that, in the absence of all proof to the contrary, it should be presumed by a court or jury, after the lapse of twenty years, that they were duly paid. *Hopkinton* v. *Springfield*, 12 N. H. 328; *Colebrook* v. *Stewartstown*, 8 N. H. 75.

The taxation of the property to the guardian is sufficient to give a settlement to the ward. It has been held here, that, for the purpose of gaining a settlement, an equitable title is sufficient, as a right of redemption, or the estate of a *cestui que trust*. *Hebron* v. *Center-Harbor*, 11 N. H. 573; *Poplin* v. *Hawke*, 8 N. H. 124; *New-London* v. *Sutton*, 2 N. H. 401; *Pembroke* v. *Allenstown*, 21 N. H. (1 Foster) 107. If the guardian was a trustee for his ward, the latter would gain a settlement, but the ward, notwithstanding the appointment of a guardian, still remains the legal owner. The law vests in the guardian not the property, but the care of it. "He shall take care as well of the person as of the estate of his ward," &c. Rev. Stat., chap. 150, sec. 17; Comp. Stat. 386.

The facts stated are sufficient to give a settlement to Mr. Searles in Salisbury; but it is contended that his daughter, E. F. Searles, did not derive a settlement from him, under the settlement thus gained, because she arrived to the age of twenty-one years in 1799, before the term of four years was completed. The argument is that, upon her arrival to the age of twenty-one years, she became emancipated, unless she was disabled to take care of herself, of which the case furnishes no evidence; and that after emancipation she no longer follows the settlement which her father may afterwards gain, but retains the set-

tlement she had at twenty-one, till she gains a new one for herself. The cases cited, *Orford* v. *Rumney*, 3 N. H. 332; *Wakefield* v. *Alton*, 3 N. H. 380, and *Fitwilliam* v. *Troy*, 6 N. H. 166, fully sustain these positions.

The mere fact that the daughter remained a member of her father's family, after she arrived at twenty-one, till his settlement became fixed, is, under the decisions here, merely immaterial. We must, therefore, hold that she derived no settlement in Salisbury, from her father, which can be regarded in this case.

By the death of her mother, in 1837, as the case states, E. F. Searles came into possession of some property. This property was admitted by the selectmen of Salisbury to be in the hands of the town in February, 1840. At that time a guardian was appointed for her as a *non compos*. In June, 1840, her property, by the inventory of her guardian, was in personal estate, $1,462. She died, and administration was granted on her estate in June, 1842, which amounted by the inventory to $1,255. The amount of property thus shown, by any reasonable intendment, was sufficient to give a settlement, and it continued to be owned by her long enough for that purpose; but the case only furnishes the means of forming a conjectural opinion. If the death of the mother occurred in 1839, as suggested in the argument, the time would be insufficient.

During part of the time, the property must have been in the hands of an administrator duly appointed, or of one or more executors *de son tort*, and for the residue, in the hands of the guardian; and it is contended that no settlement can be gained by reason of a right to a distributive share of property under administration, until after a decree of distribution. It seems to have been held, in England, that a party entitled to a distributive share of a leasehold estate, not administered, does not gain a settlement by residence upon the property. *South Sydonham* v. *Lamerton,* cited 3 D. & E. 117; S. C., 1 Stra. 57; *Rex* v.

*Widworthy*, Burr. S. C. 109; *Rex* v. *Lower Sevill*, Burr. S. C. 436; *Rex* v. *North Curry*, 2 Doug. 770; *Rex* v. *Canford Magna*, 6 M. & S. 355; unless the party is sole next of kin, *Rex* v. *Horseley*, 8 East 405. The reasons, however, on which these decisions are founded are connected with the law of removals, and have no application here.

In equity, the interest of the administrator is deemed but a trust; 1 Story's Eq. 506; and the next of kin are deemed equitably entitled to their shares of the residue; and it is but an application of the general principle, before stated, that an equitable estate, or interest, is sufficient to give a settlement, to hold, that if a party is shown to have a right in the estate of a person deceased, of the requisite value and for the required time, he thereby gains a settlement. *Parsons* v. *Parsons*, 9 N. H. 309.

But it is contended that, admitting that E. F. Searles gained a settlement in her own right, it is not material here, because her daughter, Mary Heath, the pauper, was over twenty-one years of age, and had been married several years before. She was, therefore, emancipated, and could derive no settlement at that time from her mother; and this is doubtless correct.

Mary Heath's mother died before June, 1842, and in March and July, 1844, six hundred dollars were paid over to her husband's guardian. In October, 1845, there remained of this estate in the guardian's hands, $278.09, but in October, 1846, the balance was reduced to $223.54, and nothing further is stated in relation to the situation of this property. It seems a jury would be warranted in finding that $250 remained till the end of four years from the mother's decease, but the fact is not so stated. We infer, too, that during these four years E. Heath and his wife resided in Salisbury, but that fact is not so stated.

In the argument it is suggested that the four years, required by the statute to gain a settlement by the possession of property and the payment of taxes, must be

calendar years, or political years; but we think there is no foundation for this idea. A settlement is gained, if the party has the requisite property in town, and pays his taxes for four years in succession, though his residence or his ownership may have commenced at any season of the year, and either may have terminated at the end of four years from that time. The ownership and the residence must both have continued together for four years, and the owner must have paid all taxes assessed on him, or his estate, during that time; and by those facts a settlement is gained. *Wakefield* v. *Alton,* 3 N. H. 380. It is not material whether the property is taxed, but it must appear that all taxes duly assessed were paid.

It is contended that the distributive share of the wife does not vest absolutely in the husband, but, if he so chooses, he may make it his own by reducing it to his possession. Here, the husband, being under guardianship as an insane person, could make no election; that the election, being in its nature one personal to the husband, the exercise of a marital right could not be made by a guardian, and this we regard as the true view of the case. *Parsons* v. *Parsons,* 9 N. H. 321; *Marston* v. *Carter,* 12 N. H. 164; *Wheeler* v. *Moore,* 13 N. H. 481; *Coffin* v. *Morrill,* 22 N. H. (2 Foster) 352. The husband, therefore, could have acquired no settlement by reason of the estate which his wife derived from her mother, and which still continued her separate estate. The pauper consequently could have derived no settlement from her husband.

By the statute, Rev. Stat., ch. 65, sec. 1, cl. 1, "a married woman shall have the settlement of her husband, if he has or shall acquire any within this State, otherwise her settlement at the time of her marriage shall continue." It is therefore inferred, that in such a case the wife can gain no settlement in her own right; but we think that the wife's settlement at the time of her marriage, in case her husband has none, is to continue, in the language of

the 4th section of the same statute, "until a new settlement is gained in this State, and upon gaining such new settlement any former settlement shall be lost." See Act of 1796 ; Laws of 1815, 362 ; Act of 1828; Laws of 1830, 300.

The language of the 4th clause of the first section of this act, "any person of the age of twenty-one years, having real estate," &c., is sufficiently broad to include the case of a married woman, having property, and whose husband has no settlement; and we see no reason why such married woman may not gain a settlement. It is, therefore, immaterial in this case whether the property is regarded as the husband's or the wife's.

As it does not appear that either Heath or his wife had, for four years, property of the value $250, or that either of them resided in Salisbury four years, while they owned that property, no reason appears why the account in question should not be paid by the county.

*Exceptions sustained.*